Acceleration Bay, LLC v. Activision Blizzard I think we're ready. May it please the court. Good morning, your honors. This is a very limited appeal on Acceleration Bay's part. We're just appealing a few claim terms that the PTAB refused to construe. We believe that the failure to construe these claims is an error by the PTAB, and it's reviewed de novo so your honors can correct that error without looking at any factual issues at all. The three terms, the first one we'll start off with is the term participant, which is a fairly generic term, but you have to understand and read that in light of the specification. The PTAB found in every one of the numerous IPRs filed against these three patents that these patents relate to, and I'll quote, broadcast technique in which a broadcast channel overlays a point-to-point communication network. Now, a participant has to participate in that broadcast channel that overlays the underlying network, and that's what we proposed in our construction. Very simply, we proposed an application program, which is very broad. It can be a process, a computer, a thread, anything of that nature, that interacts with the broadcast channel that overlays an underlying network. That was the construction that was proposed. The petitioner, in this case, said an ordinary mean did not give any proposal, and the PTAB just said a participant means a participant. The fact that they gave no definition at all is reversible error based on, in this case, this court's precedent in Homeland Housewares, which is directed to the PTAB. They had to resolve disputes just like district courts did. They didn't resolve a dispute. They didn't give us anything to go on to what a participant is. The broadest reasonable interpretation is not just the broadest reasonable interpretation in a vacuum. It is the broadest reasonable interpretation in light of the specification. That's the NRA man-machine case. I think this particular instance, because participant is somewhat of a generic term, is very akin to the Microsoft case, which we cited in our brief. In that case, there were terms like send and receive that were used. The board gave participant as plain an ordinary mean. You seem to be arguing for a much more narrow construction than that. What's the basis for such a narrow construction? We don't think it's necessarily a narrow construction. We just think it's a construction read in light of the specification. If you read the specification, even what the board said, that the patents relate to this broadcast channel that overlays an underlying network, if you read that and then understand what a participant in that process is, it has to be that. It can't be any type of participant whatsoever. And when the board gave it its ordinary meaning, they just said participant means participant. That's not adequate to give us a direction as to what is a participant in this particular type of network. Why don't you pick one of the patents, say the 344 patent, and tell me, you say in light of the spec, where does the spec define participant as an application program that interacts with a logical broadcast channel which overlays an underlying network? That's an awful lot of structure that you're trying to suck into a claim. A logical broadcast channel which overlays an underlying network. So where in this specification, choose the 344. Do you want to choose a different one? That's fine. I'll move to a different one. But where in this specification do you see participant defined that way? Your Honor, there is no explicit construction of participant. There's nothing in any of these patents that says participant means X. It's just not there. In fact, if you read the patents, the word participant is used no more than a handful of times. So participant has to be read in light of the spec and even what the patent on this found, that this invention relates to this broadcast channel in an overlay network. But unfortunately, none of that language appears in, for example, claim one. The broadcast, none of it, right? None of those structural limitations which are absolutely described in the spec are articulated, are they? Well, I think they are if you look at the game environment. That would be my next term. If you look at the very first part of the game environment term. But that's my next argument, actually. But I think participant in this instance, I think the PTAB has to give some construction. You just can't say participant means participant. And even if they give us the construction. They said a plain and ordinary meaning. I mean, I don't think this is particularly complicated. You just admitted that the word participant barely appears anywhere in the patent. So it's just to be given its plain and ordinary meaning. And that's where we're from. I mean, I think I know what a participant is. My kids play sports. I know when they're participating and when they're not. I mean, it's not that complicated. And that's actually a very good example, Your Honor. If participant means a kid on a soccer team or a baseball team. Is that what it means in this patent? Or should it mean something special for this patent as read in light by one skilled in the art? And if you read it as one skilled in the art, a participant does have, it participates in this very specific network that's described throughout. But the very specific network isn't claimed. That's your problem. Well, we believe it is. A computer network. That's it. Well, let me just jump to the next term then that I want to talk about. And it really comes down to the terms game environment and information delivery systems. And these are two terms that also PTAB would not give construction to. They said the preamble would not give a patentable weight. Now, that finding that it was part of the preamble, you just read the claim itself. The title of the patent is a distributed game environment. If you read the claim as Judge Moore just talked about, it's a computer network for providing a game environment for a plurality of participants. Now, there's nothing about that sentence that would indicate that's a preamble to not give patentable weight. I agree. And whose fault is that? I mean, were you in the courtroom for the last argument? So who do you think I believe has the obligation to make clear the scope of their claims? The patentee. Right. So I have never seen, with one exception, another case which you cited to us that came before my time on the bench, but I've never seen a claim that doesn't say comprising. And some of the others do. Claim 12 in this patent. How many claims have you seen that don't have a transition word comprising, consisting of, or consisting essentially of? It's almost never. Almost never. I polled people around the court, you know, started saying, am I crazy? I mean, I've read hundreds of thousands of claims at this point in my life. And this patent was acquired by Boeing. So this isn't some guy in his garage who drafted his own patent. This is a sophisticated company with a huge in-house legal department, and they've drafted a claim in a way which makes it intentionally confusing as to whether a certain portion of that claim is a part of the preamble or not. So who ought to I hold that against? Well, that's a loaded question. Yeah, sure. You can just move on. Okay, I will. I'm letting you off that hook. I appreciate that. Swim, be free. Well, let me put it this way. It doesn't have the word comprising in it, and claim 13, you know, does. So to me, it would indicate that the patentee, when they wanted to have a preamble and you have the transitional phase, they did so. They knew the difference. So the fact they didn't put it in there, it tells you they didn't have a preamble. The fact that two of the terms. Yeah, but they don't have a preamble. I mean, you know, Chisholm 1 patent says a claim consists of a preamble, a transition, and a body, the body of which are the elements. Our case law says consistently and unequivocally that a preamble in general is not a limitation. And so now you have something that looks like a preamble. To me, a computer network for providing a gaming environment, if the word comprising came next, we'd be clear it was a preamble, wouldn't we? Yes, I think that would be correct. But you left the word comprising out. I have every once in a while, I will say, when I say I've never seen a claim like this, once or twice I've seen the word including instead of the comprising. But, you know, most patent attorneys wouldn't do that. They don't want to infuse confusion into their claim intentionally. I agree. So I think what you look at here, say, first of all, is it a preamble? We argue that because there's not a transitional phase and you have two terms in that sentence. You're never going to win on that with me. You've already learned where I stand on who has the obligation of making the claim clear. So if you chose not to put the word comprising in, I'm going to construe the broadest possible preamble and give you none of those limitations at this point. But then I think you have to go back. There is a rich body of case law that says preambles can be limiting. And that happens quite frequently in our cases. It happens exceptionally. It does not happen quite frequently. But perhaps you can explain why it nonetheless ought to happen here. Well, because it does give life and structure to the claims. But even if I – here's your problem. So suppose that I was willing to say a game environment is in fact a limitation. Do you know what I would then conclude? I would then conclude that this computer network and all of the participants are limited to use in a gaming environment, i.e. gaming. But I wouldn't necessarily conclude that that requires a logical broadcast channel overlying an underlying network. That's particularized structure. Gaming environment just seems to me to be a limit as to how this can be used or in what environment it can be used. Even if it's a limitation, I just don't see how it gets you as far as you want it to go. Well, I think the way you look at it is one skill nor understands where the gaming environment and how that's done. If you look at the OSI model, it's done at the application layer. And that's where the overlay layer occurs. So I think if you read the term game environment into the specification of the patent, then you would get where we want to get to, which is the overlay network. And I reserve the rest of my time for the cross-appeal and rebuttal. May it please the Court. Jim Davis, sir, cross-appellants. I'll first address the issues that Pat Hunter has raised on their appeal, and then I'll address the three issues on cross-appeal. And if I may reserve any remaining time for rebuttal solely on the cross-appeal issues. Pat Hunter's story that they're telling here doesn't match up with the claims or the specification of the whole patents. You heard him mention the OSI model, which they brief extensively. As the Board pointed out correctly below, that concept isn't anywhere to be found in the whole patents. They're trying to have it both ways. They write their claims that do not require an application program or do not require an underlying network. And then when they're faced with the prior art, they try to narrow those claims in again to try to read those limitations in. The public and the world has a right to know what the scope of the claims are, and the patent owner has no one to blame but themselves, or at least the person they have bought them from, for the way that they're written. The Board properly rejected Pat Hunter's attempts to read these two limitations into the claims through the constructions of participant, information delivery service, and game environment. In fact, the patent owner knew how to claim these limitations and when they wanted to because they tried to add them in through their motions to amend here. There's no definitional language in the specification. There's no disclaimer. There's no description of the quote-unquote invention. There's no consistent use of these claim terms in a manner that would require or allow any of these limitations to be read into the claims. The 634 patent even has a summary of the invention. Neither of these two concepts is mentioned in there. Instead, the Board properly applied the plain and ordinary meaning of participant, a participant in this network, and also found the terms information delivery service and game environment are not limiting. Now on that point that was just brought up, there's two reasons why the Board correctly found that those two terms are not limiting. First, these are for-use limitations. And just like the situation here, although it is odd, as Judge Moore pointed out, there was no transitional phrase in the Shriver case. And what the court looked at there was whether or not this for-use limitation was limiting in any manner. And it found it wasn't. The same logic applied here through what the Board did. The other issue that came up earlier during Patent Owner's Argument was whether or not these are parts of the preamble, information delivery service, the game environment. In their Patent Owner responses in the proceedings below, both for the 966 patent as well as the 344 patent, Patent Owner admitted that these are part of the preambles at Appendix 9093 for the 966 patent and 31661 for the 344 patent. The second basis that the Board applied or used to determine that these two terms are not limiting here is that the claims are otherwise structurally complete. Therefore, the preambles, as Patent Owner has admitted these limitations are part of, are not limiting. Unless there's any further questions on those points, I can move on to the cross-appeal issues, Your Honor. So the three issues on cross-appeal were whether or not the Linn reference is prior art, the 634 patent Claim 10, its indication limitation, and the new claims. I'll step through those three issues in order. This is yet another example of the Board setting too high a standard for public accessibility for the Linn reference. Just as this work found in Ray Hall, the petitioners here offered a declaration from effectively a librarian who was the systems administrator at the UCSD Computer Science Technical Reports Library. He testified as to the library's general procedure. Okay, but there's no search word. You couldn't use a search word, right? To get access, you would have to either have the date, the year, or the author, right? Your Honor, I disagree that the search functionality was operating. The Board erred in making that finding. Mr. Little, the systems administrator, testified that the search functionality was there in 1999. That's at appendix 703638, lines 7 to 10. Mr. Little testified that the website allowed searching by author, year, and that there was also an advanced search. But yet he had never used the advanced search. And there was evidence later on that the advanced search didn't work, wasn't operating during the time in question here. So Mr. Little actually didn't help. I mean, he said that searching was by author and year. Your Honor, if I may respond, I respectfully disagree. At appendix 7034, page 30, line 16 to 31, line 6, he said that he had used it before and it was highly likely that it would have worked for the Lin reference, although he hadn't tested it for that one. The evidence that was put in on cross-examination of him merely said that the UCSD CSE server is unavailable at this time. That was in 2016, decades removed from the 1999 time frame. And what Mr. Little said, it's possible it's not working, present tense, not past tense. I thought he said he admitted he had never used the advanced search feature. I think that we can pull the particular portion of the appendix at 7034 on that point. I believe he said he had used it before. Not for the Lin reference, though. Well, even if Mr. Little testified that he hadn't used it as to the Lin reference, wasn't there in this record evidence that it wasn't functional? Only as of 2016, John. What might simplify this somewhat is this court has never required, for purposes of a library, before having electronic search functionality. What this court has looked to is what type of indexing was done. Here, Mr. Little testified that an index number was applied. He testified that the same types of documents were all grouped together. Those are the two indexing factors that this court looked to in N. Ray Hall. He also testified that because this is a computer science library, everything is then indexed by subject matter. Because the library as a whole is one particular subject matter. And as this court pointed out in Blue Calypso, indexing by subject offers a meaningful assurance that an ordinarily skilled artist in exercising reasonable diligence will be able to locate a particular reference among many volumes stored in the library. That's precisely... I still don't understand. If it's organized by subject matter, how does one search and come up with it? The same way one would go... While this is an online library, the same process that would apply in a brick and mortar library also applies online. As Dr. Carger, petitioner's expert, testified, a person of ordinary skill in the art would have been able to go through the titles and look at each one of them, see the Lin title, and know that it was immediately relevant and pertinent to this issue. It's the same way a person of ordinary skill in the art would have gone to a particular area of the library, say the computer science area. There might be hundreds of volumes there, which this court has repeatedly held as fine, and expect that they would then be able to go through and look through the different references to find whatever it is that they need to find. There's no requirement that there be a search functionality, even though there was here. I don't understand. In the board's opinion on page 17, the board says, at best, Dr. Carger's evidence suggests an artisan might have located Lin by skimming through hundreds of titles in the same year with most containing unrelated subject matter. The only types of references that were there is the technical reports library for computer science. That's the only thing that they had. Wait a minute. Let me get this straight. You think technical reports related to computer science is a sufficiently narrow field that this particular reference could be identified as being present and could have been located by a skilled artisan among the 700 and some odd references that were otherwise there and indexed by author name? As well as here, Your Honor, yes, I do. Dr. Carger testified... Computer science. It's a really big field. It's not a little field. Not even in this year was it a little field. I agree, Your Honor, but not all libraries... It's unreasonable to expect... It's kind of like saying we have a foreign language library. Every possible foreign language in existence is contained in that library, but we're sure you'll find the Spanish document somewhere. By way of analogy, Your Honor, Inouye Hall dealt with the situation where the... I think it's a German thesis and a shoebox in the basement somewhere or something. Inouye Cronin did deal with the shoebox in a basement. Inouye Hall dealt with a special dissertation section of the library, which wasn't limited by subject matter at all. As long as it was indexed, it was found to be publicly accessible. Here were steps beyond what was required in Inouye Hall where you have it not only indexed by giving an individual number, by a particular paper type, but also by subject matter, author, and year. There's several additional factors, additional tools that would have been available to a person of ordinary skill in the art to locate the lame reference. Unless there's any further questions on that topic, I can turn to another topic on cross-appeal, claim to 10 of the 634 patent. The board committed two errors in finding that this limitation of indication was not met. First, the board erred in finding that Dr. Carter hadn't explained how a participant knows the identities of its neighbors. That finding's not supported by substantial evidence because Dr. Carter, in paragraph 164, stated, and this is a quote, a participant must know the identities of its neighbors in order to send messages to them. The board compounded that error by then excluding Dr. Carter's rebuttal testimony on that very same point, particularly paragraphs 193 to 202 of his rebuttal declaration that were addressing this issue of whether or not an individual participant would know the identities of its neighbors. The board then further erred in finding that even such a showing wouldn't meet the claim limitations, requiring some higher level showing that wasn't borne out by the board's construction, which was proper, merely requiring something that serves to indicate. The issue here between the parties is whether or not the Shoebridge references participants are aware of who their neighbors are, and what we're asking for is the board to vacate that determination, remain with instruction to consider all of Dr. Carter's testimony on this point. Wait, you want the reply? Yes, Your Honor. I have to review that under an abuse of discretion standard. Why was it an abuse of discretion when Dr. Carter gave testimony in his reply that Shoebridge renders obvious this limitation and they get the petition despite pointing to Shoebridge as rendering obvious lots of limitations, never pointed to it rendering obvious this limitation? The board said you've given testimony in a reply by an expert that wasn't present in your petition, and therefore I'm going to exclude it. How can I possibly conclude that that was an abuse of discretion? There were 15 paragraphs in total that the board was addressing. The last three did deal with obviousness, and they only dealt with obviousness in response to patent owner's construction that was properly rejected by the board. Paragraphs 193 to 202, however, did not rely on obvious, didn't address obvious. They were directed directly towards this issue. So in the board's stated explanation for why it excluded it, as Your Honor pointed out, was that basis of obviousness, which was an inaccurate and incorrect characterization of what Dr. Carter's testimony was. And just on the last remaining issue on the new claims, Your Honor, the board's finding of the priority does not disclose the limitation of participants can join and leave the network using the broadcast channel is not supported by substantial evidence. The board looked to and analyzed the priority to see where a participant got information from before joining the network, as opposed to looking to whether or not the broadcast channel was actually used to join a network, and for that reason we do ask that you vacate and remand for the board to look to the actual claim language. If there aren't any further questions, I'll reserve any remaining time for all of Your Honors. Thank you. Very briefly, I believe Your Honors hit most of the points on the Lynn reference. I'll just point out that the PTAB made explicit finding of facts. Actually, it's 12 pages of facts they cited, and they applied all the current law that my friend over here talked about, the Inouye Hall case and all the blue clips, all the case law it was controlling at that time, and they had provided substantial evidence for their finding that Lynn was not publicly available. They found that it was not disseminated to the public, like at a conference. This court recently had some cases in the last couple months about how you should be very flexible about distributing papers to conferences, the GoPro case and the Jazz Farmer case, but they found that was not distributed. It was just loaded onto the website and that the accessibility was based on the reasonable diligence to locate Lynn by the relevant public, and that was what they looked for at that point. There was no evidence. This was an issue of lack of evidence. As Judge Rainey pointed out, Mr. Little actually did more harm than good. When he was testifying in deposition, he admitted that he didn't know how the search functionality worked, didn't know if it did work, and when we pointed to the fact it wasn't working today, he says, well, it's not working for Lynn, apparently. So that is evidence that was never rebutted, and part of the key evidence that the PTAB relied upon. With respect to the 634 patent, I believe Judge Moore, you got it right, they're looking at an abuse of discretion here, whether or not a reply declaration could come in. Do you have a right to file a reply declaration for the PTO? Is that a matter of right? Do you have to ask for special permission? No. You have a right if you're the petitioner, and rules have just recently changed. Now the patent owner is going to have a chance to file a SIR reply. I understand. But if you have a right to file a reply, and 12 paragraphs are legit, they don't go beyond the scope of your petition, and then three paragraphs go beyond the scope of the petition, should the PTO be able to reject the reply in its entirety and refuse to consider any of the reply? In light of the extra paragraphs? I think it's their discretion as to what they accept and what they don't accept on the reply. Just like district courts, if you put a reply in that's inappropriate, the court has discretion to either accept it or not. They can look at the information that's in this reply and reject it because the bulk of the reply, or the meat of it, is going to be out of bounds. It wasn't raised in the opening petition. I think it's their discretion that they can do so. But the evidence they cited to does support their finding that claims 10 and that the dependent claims are valid over the references. With respect to the final argument that was up on the cross appeal regarding the new newly added amended claims, most of the argument that they brought here is waived. I think the entirety of the argument has been waived. They argue that the board got the claim construction wrong, but they never proposed claim construction down below. I think that's very telling. You criticize the construction that was given, but if you don't propose construction, it's waived that argument. They also added in on appeal additional grounds for the basis for remanding back that was not part of the original grounds. If you look at the original petition, they had Lynn by itself, direct play in view of Lynn, and Lynn in view of Gaudier. On the appeal, they brought in Showbridge and McCain, which is not part of the record below. I'm out of time, so thank you, Your Honors. Thank you. Just a couple quick points, Your Honors. On the issue of Lynn, I would also direct the court to In re Lister, which also addressed this issue of coming up with hundreds or even thousands of irrelevant results, and that's still making a reference publicly accessible. I think that's pertinent to that same analysis with respect to claim 10 of the 634 patent. In Lister, was the manuscript accessible by using our T&N keywords? That's not the case here, right? Correct. Lister doesn't apply here. I think the principle that flows throughout Lister, as well as Blue Clip, is the idea that there can be an expectation that a person of ordinary skill in the art might have to look at hundreds of references or even thousands of references, and that's okay. It's expected and acceptable. That same principle applies here, just as if you're going through a brick and mortar library. There might be a hundred or so books that you need to look through, but you'll find what you're going to get to. On the claim 10, 634 issue, the meat of the response, so to speak, were these 12 or so paragraphs that were directly directed at this issue, which I think the board has an obligation to consider. Finally, with respect to the waiver argument on the substitute claims, this issue hadn't been raised before. Patent owner had never argued that the reason why the limitations were not met was because a server was being accessed. In addition, patent owner, again here, is improperly quoting the relied upon grounds. The grounds that were relied upon did include Shoebridge, as well as McCain and Gautier. That's, for example, in the 966 opposition to the motion to amend Appendix 9308. Patent owner is quoting from the other set of proceedings, the Lynn proceedings. He's referencing the wrong part of the record. Okay. You're out of time. Yes, ma'am. Thank you. Thank both sides. Case is submitted.